IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**WILLIE B. GAINES, JR.**                                                            **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO. 3:13cv298-LRA**

**SHERIFF BRYAN BAILEY, ET AL**                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Willie B. Gaines ["Plaintiff" or "Gaines"], *pro se,* appeared before the undersigned United States Magistrate Judge on the 5th day of November, 2013, for a hearing conducted under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and its progeny. Gaines appeared *pro se*, and Defendants were represented by Jason Dare.

Plaintiff was granted *in forma pauperis* ["IFP"] status by this Court by Order entered July 10, 2013 [10]. A district court may dismiss an IFP complaint as frivolous or for failure to state a claim under 28 U.S.C. § 1915 (e)(2)(B). A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A *pro se* prisoner is entitled to develop his complaint factually before a proper frivolousness determination can be made. *See Eason v. Thaler*, 14 F.3d 8, 9-10 (5th Cir. 1994). The purpose of a *Spears* hearing is to "bring into focus the factual and legal bases of prisoners' claims." *Id.* at 9 (quoting *Spears,* 766 F.2d at 181). The undersigned conducted the hearing in order to allow Gaines an opportunity to fully develop the factual details regarding his claims against these Rankin County Defendants.

Gaines explained his claims under oath to the Court, and his testimony has been considered in conjunction with the allegations contained in the Complaint and other pleadings. After due consideration of his testimony, this Court is required by the applicable law to find that Gaines has failed to state a constitutional claim against these Defendants; the cause shall be dismissed pursuant to 28 U.S.C. § 1915.

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff was a state inmate, incarcerated in the custody of the Mississippi Department of Corrections [MDOC] in April 2013. On or about April 17, 2013, he was transferred to the Rankin County Correctional Facility on another charge. He remained housed in Rankin County, in the custody of these Defendants, for about two weeks. He was returned to a MDOC facility on May 3, 2013. All of Plaintiff's complaints relate to this two-week period.

Plaintiff complains that he was housed in a cell alone for most of this two-week period due to his HIV status. Although the jail was overcrowded, and he had an empty bed in his cell, the jail did not allow other inmates to room with him. Two other inmates, including Josh Peeler, were placed in his cell for about two days. After some unclear altercation, they were then moved out. Josh Peeler said he was told that the move was for his own safety. Other cells had three inmates in them, one inmate having to sleep on the floor in these cells. But, the other bed in Plaintiff's cell remained empty. Plaintiff was never told that he was segregated because of his HIV status, but he believes that that was the reason. Gaines testified that he was given extra food during this two-week stay. He suffered from no negative consequences due to being housed in a cell by himself.

Plaintiff also complains that he did not get his HIV or psychiatric medications for the two weeks he was housed in Rankin County. He went to the medical department when he first arrived at Rankin County to enter a consent for them to find out about his medications. Nurse Minor told him that MDOC would provide his HIV and psychiatric medications after the consent was sent. Plaintiff testified that that was not the way it worked: Rankin County should have ordered the medications and then sent an invoice to MDOC. Plaintiff was provided his sinus medication while he was in Rankin County because he brought it with him when he was transferred.

The Court finds that Plaintiff's allegations, taken in a light most favorable to him, simply do not rise to the level of a constitutional violation. The Court shall assume for purposes of this review that Gaines was not housed with another inmate solely due to his HIV status and that he was not provided with his HIV and psychiatric medications for the two-week period.

HIV-infected inmates do not constitute a suspect class entitled to special consideration under the Equal Protection Clause. *Johnson v. Brewer,* Civil Action No. 4:10cv28, 2012 WL 3580678 at *2 (N.D. Miss. Aug. 17, 2012), citing *Doe v. Wigginton*, 21 F.3d 733, 39-40 (6th Cir. 1994). Therefore, if the prison officials' actions serve a "legitimate penological interest," then they are permitted under the law. *Id., citing Turner v. Safley*, 482 U.S. 78 (1987). The Fifth Circuit has stated that "the identification and segregation of HIV-positive prisoners obviously serves a legitimate penological interest." *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992). It has also held that correctional

facilities have a real interest in protecting detainees: "administrative segregation *without more*, does not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996) (emphasis added).

 In this case, Gaines was not denied privileges due to his HIV status. In fact, he was provided with extra food due to his condition. Whereas the non-HIV inmates were crowded---with three persons in a two-man cell---Gaines was provided with two beds and more space than others.

 The Court notes that there are some instances under which a prison could not segregate HIV prisoners unless a legitimate penological purpose is shown by the prison. In those cases, the segregation must amount to "punishment" of some sort, such as solitary confinement which resulted in a loss of privileges. In Gaines's case, he has set forth absolutely no factual allegations that his "segregation" resulted in the loss of any privileges or resembled "punishment" in any way. Quite the opposite, he received more favorable housing than other inmates.

 In this case, no legitimate reason has been given for why Gaines was segregated, and the Court does assume it was due to his HIV status. The Court does not find it necessary to make a finding as to whether the segregation of HIV inmates has a *per se* legitimate penological purpose, even though some case law supports that finding. But, this Court does find that under these very particular circumstances, where Gaines was administratively segregated with *no negative consequences* for a two-week period, no

4

constitutional violation has been stated because Gaines was not punished.  As the Court stated in *Luken*, administrative segregation, *without more*, does not constitute a deprivation of a constitutionally recognized liberty interest.  *Luken,* 71 F.3d at 193.

The Court also finds that Gaines has failed to set forth a constitutional claim regarding the failure of these Defendants to provide his psychiatric and HIV medications for two weeks.  Plaintiff concedes that he took his sinus medications with him to Rankin County and received them regularly.  He testified that he discussed his medications with Nurse Minor and that she had him enter a consent to contact MDOC regarding the medications.  The issues regarding his medications were being addressed, not ignored, when Gaines was transferred back to a MDOC facility in two weeks.  The Eighth Amendment does prohibit conduct which evinces deliberate indifference to a serious medical need by its ban on cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976).   However, the factual scenario stated by Gaines is simply not enough to state a claim of deliberate indifference under *Estelle v. Gamble*.  He has stated a claim of medical negligence, at most.  The Court assumes that it would be impossible to prevent two-week delays in medications in many cases where prisoners are being transported.

Courts seldom interfere with the administration of correctional facilities.  "A detainee's constitutional rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration[.]"  *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)).  Further, a detainee retains only those rights that are "not inconsistent with his status as a prisoner or

with the legitimate penological objectives of the corrective system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (claim may be dismissed as frivolous if it does not have an arguable basis in fact or law). Under the circumstances, Gaines has not set forth any fact with which to show an intent to punish, or deliberate indifference, on the part of any Defendant. Plaintiff has shown no actual injury. These allegations do not rise to the level of an Eighth Amendment claim or Fourteenth Amendment claim under the circumstances. Having liberally construed the Complaint in favor of Plaintiff, the Court finds that his claims are frivolous[1] and fail to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

THEREFORE, it is hereby ordered that this case is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). A Final Judgment in favor of Defendants shall be entered on this date.

---

[1] "Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense. See *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

SO ORDERED AND ADJUDGED, this the 26th day of November 2013.

S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE
